## Case No. 13,037.

### SMITH et al. v. DRAPER.

[5 Blatchf. 238;[1] 2 Int. Rev. Rec. 6.]

Circuit Court, E. D. New York. June 30, 1865.

CUSTOMS DUTIES—TEA—ACT JUNE 30, 1864—RETRO-
ACTIVE EFFECT.

1. Under the joint resolution of April 29, 1864 (13 Stat. 405), and the 20th section of the act of June 30, 1864 (Id. 216), the legal duty payable upon a consumption entry of imported teas, made April 29, 1864, was 30 cents per pound.

2. The 20th section of the act of June 30, 1864, did not have a retroactive effect. Its intention was to equalize the operation of the joint resolution of April 29, 1864, as between two classes of persons—those whose goods, owing to a failure to enforce the resolution until a late hour on the 30th of April, had gone into consumption upon payment of the former rates of duty, and those who, on later hours of the same day, had been compelled to pay the extra duty of 50 per cent. upon similar entries; but it made no provision for those who, although their goods arrived on the 29th or 30th of April, did not on those days enter them for consumption.

3. Under the act of June 30, 1864, all teas in warehouse on the 1st of July, 1864, were subject to a duty of 25 cents per pound, when afterwards withdrawn for consumption.

This was an action [by William H. Smith and others] against [Simeon Draper] the collector of the port of New York, to recover the sum of $9,000, as an alleged excess of duties exacted by him from the plaintiffs, on a quantity of teas imported by them into that port. The teas arrived in port at about 9 o'clock p. m. of the 29th of April, 1864. On the next day, at about 2 o'clock p. m., the plaintiffs, prepared with their entry, invoice, and bill of lading, and with gold sufficient to pay the duties, applied to be allowed to enter the teas for consumption, on paying a duty of 20 cents per pound. The entry was refused by Mr. Barney, the then collector, unless the plaintiffs would pay a duty of 30 cents per pound. This the plaintiffs declined to do, and they withdrew their application, under protest. On the 2d of May following, the plaintiffs made a warehouse entry of the teas, and, on the usual bond being given, the goods were placed in a government warehouse. On the 3d of January, 1865, 500 packages of the teas were withdrawn, on an entry for consumption, and the payment of a duty of 25 cents per pound, without protest. On the 16th of January, 500 more packages were withdrawn, on a like entry, and on the payment, under protest, of the same rate of duty. On the 2d of February, 1865, more packages were in a similar manner withdrawn, paying a like duty, also under protest. These amounts of duty were demanded by the defendant by virtue of an act of congress passed June 30, 1864 (13 Stat. 202). This action was brought to recover the difference between a duty of 20 cents and a duty of 30 cents per pound on the teas, on the ground that the legal rate

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

of duty chargeable under the circumstances was only 20 cents per pound.

Mr. Culver and Mr. Lowry, for plaintiffs.
District Attorney Silliman, for defendant.

BENEDICT, District Judge. The difference of opinion as to the proper rate of duty on the teas arises out of the somewhat anomalous legislation of 1864. On the 29th of April, 1864, the day on which these teas arrived, congress passed a joint resolution (13 Stat. 405), which provided, "that, until the end of sixty days from the passage of this resolution, 50 per cent. of the rates of duties and imposts now imposed by law on all goods, wares, merchandise, and articles imported, shall be added to the present duties and imposts now chargeable on the importation of such articles." The first section of the act of June 30, 1864, provided, that teas imported on and after the 1st day of July, 1864, should be subject to a duty of 25 cents per pound. The 19th section of the same act declared, "that all goods, wares, and merchandise which may be in the public stores or bonded warehouses on the day and year this act shall take effect, shall be subjected to no other duty, upon the entry thereof for consumption, than if the same were imported respectively after that day." The 20th section of the same act provided, that the joint resolution of April 29, 1864, "shall not be deemed to have taken effect until after the thirtieth day of April, eighteen hundred and sixty-four, and shall be and remain in force until and including the thirtieth day of June, eighteen hundred and sixty-four, and any duties which shall have been exacted and received, contrary to the provisions of this section, shall be refunded by the secretary of the treasury."

In this state of the law, I consider it clear, that the legal duty payable upon a consumption entry of teas, made April 30, 1864, was 30 cents per pound. The act of 1861 had fixed the duty at 20 cents, and the resolution of April 29, 1864, increased that duty by 50 per cent. This resolution took effect at the beginning of the day of its passage. U. S. v. Williams [Case No. 16,723]; The Ann [Id. 397]; U. S. v. Arnold [Id. 14,469]; Arnold v. U. S., 9 Cranch [13 U. S.] 104. These teas, having arrived on the 29th of April, were subject to the provisions of the resolution. It was, therefore, the duty of the collector to refuse the consumption entry, on the refusal of the plaintiffs to pay the duty of 30 cents, and any argument based on a supposed illegality in his action in this respect must fall.

It is insisted, on behalf of the plaintiffs, that the effect of the 20th section of the act of June 30, 1864, is, to forbid courts to declare that any other rate of duty than 20 cents was lawful before the 1st day of May, 1864, and that, consequently, the demand of 30 cents in this case must be held to have been illegal. I do not understand the statute to have such retro-active effect. There are no

words in the act which declare an intention that it shall be retro-active, while the provision for relief in cases where the extra duty has been paid, indicates a contrary effect. For, if the effect of the act were to make illegal all exaction of extra duties which had been made on the 29th and 30th of April, the provision directing the secretary of the treasury to refund such duties would be unnecessary. The ordinary remedy against the collector would give perfect relief.

The intention of this 20th section, was to equalize the operation of the joint resolution of April 29th, as between two classes of persons—those whose goods, owing to the failure to enforce the resolution until a late hour on the 30th of April, had gone into consumption upon payment of the former rates of duty, and those who, on later hours of the same day, had been compelled to pay the extra duty of 50 per cent. upon similar entries. The act provides, as a measure of relief, for refunding the extra duties actually paid on the 29th and 30th of April, and relieves from their obligation to pay such extra duties those who had entered their goods for consumption on paying only the former rates; but it makes no provision for those who, although their goods arrived on those days, did not enter them for consumption. I am unable to see how the plaintiffs can claim relief under this section. They are not within the classes there provided for. The duty which they seek to recover back was not the extra duty exacted under the resolution of April 29th, but was the duty of 25 cents per pound imposed by the 1st and 19th sections of the act of June 30, 1864. Those articles plainly declare, that all teas in warehouse on the 1st day of July, 1864, shall, on being entered for consumption, be subject to a duty of 25 cents per pound. and to no other duty. No question is raised before me, as to any want of power in congress so to declare. The teas of the plaintiffs were in warehouse on the day named in the act, and must be held to have been legally subjected to the rate of duty which the act prescribes, when they were entered after that day for consumption.

The argument on the part of the plaintiffs amounts to this, that an illegal demand by Collector Barney compelled them to put their teas into a warehouse; that such teas were there under duress; and that the subsequent exaction by the defendant must, therefore, be held to have been unauthorized. But the demand made by Collector Barney was not illegal, nor did it, in any legal sense, compel the plaintiffs to put their teas into a warehouse. That disposition of their goods was voluntarily selected by them on the 2d of May, to escape any present demand for duties, and to await future legislation. Moreover, if illegal action by Collector Barney, on the 30th of April, had compelled the plaintiffs to warehouse their teas, it is not clear how such action would make illegal the subsequent act of the defendant, and warrant a judgment

against him in an action on his implied promise to repay moneys illegally exacted. The question raised by the action is—Did or did not the law in force when the duties were exacted, authorize the defendant to exact the duties which he did, upon a consumption entry of the teas so in warehouse? The words of the act are express, and it cannot be held that the act had no effect on the teas because the importer offered, on the 30th of April, to pay a less duty on them than was then legally chargeable.

It may, also, be noticed, as affecting any argument founded on the supposed duress in this case, that the act of warehousing the teas on the 2d of May, is the act which is claimed to have been performed under duress. But the act of warehousing on that day did not subject the teas to the charge of 25 cents duty. The teas might have been withdrawn for export before the 1st day of July, 1864, without payment of this duty. The allowing them to remain in warehouse until the statute of June 30, 1864, took effect, and then entering them for consumption, did, however, bring them directly within the provisions of that act; and then the defendant became authorized to demand the duty of 25 cents per pound. My conclusion, therefore, is, that the plaintiffs cannot recover; and it has been arrived at after giving to the elaborate and ingenious argument presented on their behalf the most careful consideration. The case has features of hardship, but the hardship arises from the failure of the act of June 30, 1864, to provide relief for such a case. I must declare the law as I find it laid down by the law-making power.

The view of the case which I have taken makes it unnecessary for me to notice the various questions raised by the defendant as to the sufficiency of the tender and of the protests, and as to the effect of the warehouse bond. There must be a judgment for the defendant.